Good morning. Our next case is Maxell v. Amperex Technology, 2023-2256, 2023-2258. Good morning, Mr. Shulman. Good morning. May it please the Court, Eric Shulman for Appellant Maxell, Ltd. Maxell asks the Court today to reverse the USPTO Board's decisions regarding the unpatentability of three of Maxell's patents related to lithium-ion battery technology. I think we have back-to-back today two appeals that cover three of the Maxell patents. This covers the first two, the 446 and the 019. The second will cover a third patent, the 035. There is significant overlap between these appeals. All three patents relate to improvements in rechargeable lithium-ion batteries. Specifically, they address improvements in the composition of the lithium-containing transition metal oxides, the LCTMOs that form the cathodes of the batteries. Then the Maxell patents also address compounds that are added to the liquid electrolyte to impart other beneficial properties. The 446 and the 019 patents at issue here require the addition of compounds with at least two nitrile groups in the molecule. In the underlying IPRs here for the 446 and the 019, the Board found all challenge claims unpatentable based on a combination of Choi and Kim. The finding here should be overturned because it is not supported by substantial evidence. Your problem, counsel, is that your claims are very broad. They include a lot of metals. They certainly include aluminum and magnesium. Adding the reference to multiple nitriles for the same kind of technology would seem to be fairly obvious. You haven't shown evidence of unexpected properties from doing this? I don't think that the Board found that Maxell offered sufficient evidence on unexpected consequences, unexpected results. I think that is true. If we are talking about the selection of magnesium and aluminum, Choi, although it includes those elements, it does not explicitly disclose a formula that expressly discloses the claimed formula. While magnesium and aluminum are options, the Board actually found that a person of skill would be motivated to select those options, even though there is no express disclosure of the claimed formula. You don't have a claim to magnesium and aluminum only, a species claim, so to speak. You just have very broad claims that include magnesium and aluminum. That's correct. The claimed formula does include magnesium and aluminum. The issue is that they are options, and Choi also has those options. But what the Board found was that a person of skill would be motivated to select from those options. Choi allows for an incredible amount of variation. For that one metal, there are 25 optional elements that can be selected in any combination, one or more. The Board had to find that a person of skill would be motivated to go into that huge number of combinations and select just magnesium and aluminum in order to match the claimed formula. That's the only possible overlap between these two formulas. That's like the proverbial needle in the haystack. You're selecting for Choi's metal. But, Counsel, wasn't there evidence in the record? Not only was there expert testimony, but there were several references. There was Tukumoto, which talked about how magnesium is particularly good for doping. There's Madavi, another journal article which talks about how you get better thermal stability by adding magnesium and aluminum. Finally, there's the published patent application, Sato, which is also doping cathode material with both magnesium and aluminum, and in fact claimed that very composition and claimed four of its application. So, in that way, why isn't all of that substantial evidence to support the Board's finding that looking at Choi's closed set of choices for elements you would add into your cathode material, substantial evidence for picking magnesium and aluminum? Right. So, the issue there is, as you noted, those are experimental research papers, Tukumoto and Madavi. And the way that the Board and ATL's expert used those references was to show that in the background knowledge of a person's skill would be the knowledge to simply go and select magnesium and aluminum. Tukumoto and Madavi are... I don't think our court has ever said academic papers published in technical journals are just mere research papers that don't count for purposes of understanding the prior art at the time of the invention. Have we? I don't believe we cited a case directly on that question, but there is a difference between what is in the prior art, which is everything in the prior art, and what a person of skill has access to in their background knowledge base. We cited a couple of cases on that point, that there's a difference in scope between those two issues. We cited, and I'm sorry I can't pronounce it, but it's the Phillips v. Google case, 948 F. 1330, but also Inres Zapori, to show that the level of skill is important because it impacts the amount of background knowledge that a posita has access to. In this case, what we have are three disparate references sort of through time that don't show that these issues related to magnesium and aluminum and their doping, I guess their relevance to doping, was so well known in the art that a person of skill at the time of the Maxell patents would have known to just select them. Councilor, you say you're claiming a needle in a haystack. Well, I might agree that the prior art is a haystack, but when I look at your claim, that looks like a haystack also. And the only difference here is a dinitrile versus a mononitrile, which isn't much of a difference, and the dinitrile is in the same field of endeavor. I agree. They're both, they could both be haystacks. They both have a lot of elements, but despite the breadth, the only overlap between the two that the board relies upon to render the claimed limitation obvious is the selection of magnesium and aluminum. So that is the needle in the haystack that the board needed to find in order to render obvious the claimed limitation. So even though they're very broad, and CHOI is broader than Claimed Formula 1, it needs to, such that the board found it necessary to find whether a person of skill would be motivated to select those elements. So they are very broad, but the overlap is very, very small and required a logical step. Illogical in this case, the person of skill would have selected those. And I think that that sort of bleeds into the question of overlapping ranges. The court's jurisprudence on overlapping ranges have made clear that even though there might be some potential overlap that could be found, it is not true in all cases that an overlap necessarily creates obviousness. That was the case in Moderna TX, where the prior art, where they were dealing with claims of these acids that had four components. And because there was a potential overlap that could be found through assuming things about the other three components, that wasn't sufficient to render obvious the range for the fourth component. Similarly here, there was an issue that there was too much work to be done. You had to make too many assumptions about those other components in order to manufacture an overlapping range. That's similarly the case here. First, CHOI has to be modified significantly and whittled down before you can compare these ranges, because the range and the claimed limitation is much different than the claim in the prior arts formula. They're not directly comparable without some amount of modification. And the assumptions that go into that include that you can sort of select any of those pieces of CHOI and set them at any concentration without disturbing the rest of the formula, and you can do that in any amount. That's similar to what this court found was inappropriate in Moderna TX. So there's support for the idea that even though there might be some theoretical overlap between CHOI and the claim limitation, it's not sufficient to render obvious the claim limitation. What about the evidence in the record, though, about selecting a very small amount of magnesium and aluminum? Again, going back to Tukumoto, going back to Sato, going back and now going to Watanabe, they all talk about the reasons for why you would have a small amount of magnesium, a small amount of aluminum, and amounts that comfortably fit within the claimed range. So in that way, it's not some random search, and maybe even a random search would be okay under routine optimization theory, but we have arrows pointing to, in fact, the claimed range for magnesium and aluminum. Arrows, the evidence in the record pointing to your claimed range. So the evidence in the record with respect to Madabi and Tukumoto and Watanabe and Sato, those references were used not in part of this combination, but to understand what a person of skill would have known to do. And again, there's no indication that those references are within the general background knowledge of a POSITA, and the case most on point to this that we cited in our briefing is Randall Manufacturing. As sort of a foil here, the court there found that the background knowledge made it clear that the limitation at issue, the raising of bulkheads, had become prevalent, had become so well known in the industry that it would have been well known to everybody. Here, that is the evidence that is lacking. There are these research papers, but they appear experimental and disparate in time. There's no evidence and no testimony that those had become so well known as to be in the general background skill of a person of skill at that time. And I see that I'm into my rebuttal time. If there are no further questions, I'll reserve the remainder. We will save your time for you. Mr. Cox. Thank you. May it please the court. I think what we've been discussing and what I understand the complaints from Maxell to be is that Choi discloses too much. And I'm not used to that being a complaint about the prior art was is that it discloses other things or other embodiments that are not part of the claim. Maxell wants to see an express disclosure of the claim formula, an express disclosure of a specific chemical embodiment that includes both MG and AL. And that's not the standard. That's not what this court needs substantial evidence for. There is substantial evidence, as we discussed, that there's plenty of motivation to combine. And the motivation to combine is way more than, as Maxell argues, just building a better battery. You see specific motivations in Kim to add this dinitrile additive that's going to produce a protective layer that enhances the thermal stability, enhances the battery characteristics that both Maxell and Emprex agree in this appeal are common goals in the battery industry. And there's, as we discussed, not only do those additional references like Tukumoto and Sato and Watanabe teach and suggest that the use of both MG and AL. Are dopants that a person of skill in the art would want to use in order to improve the thermal stability and characteristics of the battery. We have the testimony from Dr. Vance Shockwick at Appendix 1998, paragraph 186, that it was known in the art that these were common co-dopants. And so that testimony alone is sufficient and substantial evidence to support a finding that a person would select MG and AL. But not only is that testimony exists, it's supported by the multiple corroborating secondary references, as well as the admissions of Dr. Lutt that use of aluminum was a known dopant in 2006 at the time of the prior art. I want to be real clear about what is and isn't disputed in this appeal because it does involve two patents. With respect to the 019 patent, the claims of that patent don't require MG and AL, including MG alone is sufficient to meet the claims of the 019. And so in this appeal, Maxell has not disputed for the 019 patent that the elements of M2 are met. And so we're already at the point now then, because CHOI does disclose one exemplary cathode material that includes magnesium in the claimed concentration of 0.05, that we're just now talking about whether there's in fact substantial evidence to support a finding that a person of skill in the art would add aluminum to that dopant and optimize to the claimed concentration. Because aluminum was itself already a well-known dopant, and we have the testimony from Dr. van Schakwijk that adding the aluminum enhances the structural stability of the lattice, which is a different benefit than the addition of the magnesium. We have clearly substantial evidence to support the addition of both magnesium and aluminum. And lastly, I didn't hear anything from opposing counsel about this result effective variable. I think it is undisputed that the selection of the concentration is a result effective variable. There's testimony below that the selection of Mg and Al are that once you've selected Mg and Al, the amount of the concentration that you add for each is going to affect the conductivity and thermal characteristics of the cathode material. But that adding too much of either dopant negatively affects the total battery capacity. And so you have an obvious optimization problem within the ranges disclosed by Choi. And you have testimony from Dr. van Schakwijk that's unrebutted and undisputed that a person of skill in the art would know that adding too much metal additive negatively degrades the total battery capacity. And when you look at the references like Tukamoto and Watanabe, Tukamoto teaches it tests different concentrations of magnesium and finds that 0.01 has the best conductivity of all the different concentration ranges of magnesium. That's within the claimed range. Sato teaches a total concentration of magnesium and aluminum that's 0.03, which is within the claimed range. Watanabe teaches a cathode doped with one or more of magnesium, aluminum, and manganese and teaches that that concentration should be at least 0.005, which is again within the claimed range. Also, if we had a claim where one metal was aluminum and one was magnesium and that's it, would we have quite a different story? I want to be clear about the claim that you're asking about. When you say we have a claim where we have one metal that's magnesium and one metal that's aluminum, are you talking about two different claims? What we have is each metal is selected from the group consisting of several, which include aluminum and magnesium. And the second is a metal selected from a group consisting of many, including aluminum and magnesium. In other words, the haystack. This is the haystack. They're not claiming a needle, are they? They are not claiming a needle. If they were, that would be different. Well, if the needle that they did claim was Mg and Al, I don't think we would have a different result either because that is also disclosed by Choi. Now, if they had claimed other needles about Mg and other elements that are not disclosed by Choi, then I think we would be in a situation where we would potentially be needing to combine Choi with other prior art that discloses those other elements. But because Choi does disclose Mg and Al, I don't think it matters if they claim the entire haystack and the entire universe. If the claim is so broad that it encompasses a species that is taught by Choi and that is rendered obvious by Choi to a person with skill in the art, I think that's still invalidating. Whether they claim the whole haystack or whether they had a dependent claim that is just one piece of hay that's just Mg and Al, I think that's still fairly disclosed by Choi. Isn't this case basically a question of dinitrile versus mononitrile? I think that was how the case started. I don't think that's how it's been argued today because I think there really can't be any dispute that there was clear evidence in the record and testimony from Dr. Van Schakwyk that using dinitriles has advantageous properties over additional mononitriles. What I regard as a throwaway argument that because Choi teaches mononitriles, you wouldn't use dinitriles is just based on a speculative throwaway sentence in Choi. It's clear that a person of skill in the art would want to use dinitriles because that's what Kim says to use and what teaches a protective layer. And Dr. Van Schakwyk says that the dinitrile has better, you're able to create more film with less additive and that that's desirable. And that furthermore, the dinitrile does not negatively affect the conductivity in the same way that the mononitrile does. I've hit the points that I intend to hit for your honors, unless the court has additional questions about this appeal, I'll yield the rest of my time. Thank you very much. Mr. Cox. Mr. Shulman has some rebuttal time. Thank you. So I want to start by going back to the motivation to combine. I think you just heard Mr. Cox say that the parties agree that the goal of thermal stability is a common goal in the industry. And that's part of the issue here, that a desire to improve a common goal is not supported by substantial evidence. The reliance on a general expectation of further improvement of generic goals is generally insufficient. So in active video, this court addressed the build something better argument, the motivation there because it was just to build something better. There is no relation to the specific combination at issue and didn't explain why personal skill would combine the prior elements in the way the specific way that the invention does. And here, Troy already discloses a thermally stable materials and the board recognized that in its decision. That a person of skill might further improve this common generic goal is similar to what ran afoul of active video. It's not enough to want to build something better. So similarly here, the mere fact of a potential incremental improvement stability. To what extent does that argument apply in the cases? I believe this is to be where the elements that we're discussing are volatile in nature. And it just seems to me that it's more than just a common goal in this particular field of art to achieve greater stability. It's a necessary goal. So anytime you have an increases in stability, then that's that's seems to me to be something desired and something that a person of skill in the art would be pursuing. I think it is agreed that it is a common goal and generally pursued to thermal stability. But here, the board's decision relied on the fact that a person would want to further improve what is in Troy and based that in part on the separate mechanisms of Troy and Kim, which we similarly briefed is an issue under cardiac pacemakers. Where it was known that there were two treatments for two separate arrhythmia treatments, but the combination of those two treatments in order to. To treat a mixture was not so, even though the issue of mixtures was known, and the two individual components were known that was not sufficient. And so to hear the idea that that it's known that you want to improve thermal stability, and you have 1 way under Troy that already improves thermal stability and 1 way under Kim that also improves the ability. You would want to that you would be motivated to combine those 2. Mr. Shulman that includes our argument in this case, and the case is submitted.